April 15, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1415

JOHN FORWARD
Plaintiff, Appellant

v.

GEORGE THOROGOOD, et al.,
Defendants, Appellees.

ERRATA SHEET

The opinion of this Court issued on January 29, 1993, is
amended as follows:

On page 4, footnote 1, line 1: delete the comma between
"Nimmer on Copyright" and the " " sign.

On page 5, line 3: delete the comma between "Nimmer" and

the " " sign.

On page 9, line 5: delete the comma between "Nimmer" and

the " " sign.

January 29, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1415

JOHN FORWARD,

Plaintiff-Appellant,

v.

GEORGE THOROGOOD, et al.,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Cyr and Boudin, Circuit Judges,

and Hornby,* District Judge.

Richard J. Shea with whom Kenneth M. Goldberg was on brief for

appellant.
Gordon P. Katz with whom Kim E. Perry and Jay M. Fialkov were on

brief for appellee.

* of the District of Maine, sitting by designation.

BOUDIN, Circuit Judge. This is an appeal from a final

judgment determining the copyright ownership of certain

unpublished tape recordings of the musical group George

Thorogood and the Destroyers (the "Band"). The district

court ruled that the Band held the copyright to the tapes and

enjoined appellant John Forward from making commercial use of

the recordings. We affirm.

The basic facts can be briefly stated. Forward is a

music aficionado and record collector with a special interest

in blues and country music. In 1975, Forward was working as

a bus driver when he first met Thorogood at a Boston

nightclub where the Band was performing. Forward was

immediately taken with the Band's act and struck up a

friendship with Thorogood. Thorogood and his fellow band

members, a drummer and a guitar player, had been playing

together at East Coast colleges and clubs since 1973.

Upon learning that the Band had yet to release its first

album, Forward began a campaign to persuade his friends at

Rounder Records to sign the Band to a recording contract.

Rounder Records is a small, Boston-based record company

specializing in blues and folk music. As part of this

effort, Forward arranged and paid for two recording sessions

for the Band in 1976. The purpose of the sessions was to

create a "demo" tape that would capture Rounder Records'

interest. At Forward's invitation, one of the principals of

-2-

Rounder Records attended the Band's second recording session.

Other than requesting specific songs to be recorded,

Forward's contribution to the sessions was limited to

arranging and paying for them.

Rounder Records was impressed by what it heard; the day

after the second session, it arranged to sign the Band to a

contract. The Band agreed that Forward could keep the tapes

for his own enjoyment, and they have remained in his

possession ever since. In 1977, the Band's first album was

released under the Rounder Records label. Forward was

singled out for "special thanks" in the album's

acknowledgements. Since then, Thorogood and the Destroyers

have released a number of records and gone on to achieve

success as a blues/rock band.

The dispute between the parties arose in early 1988,

when Forward told the Band that he intended to sell the 1976

tapes to a record company for commercial release. The Band

objected, fearing that release of the tapes would harm its

reputation; they were, the district court found, of

"relatively primitive quality" compared to the Band's

published work. On July 5, 1988, Forward filed suit in the

district court, seeking a declaratory judgment that he held

the common law copyright to the tapes. Determination of

copyright ownership is governed by the common law of

copyright because the tapes are unpublished and were recorded

-3-

in 1976, prior to the January 1, 1978, effective date of the

Copyright Act of 1976, 17 U.S.C. 101 et seq.1 The Band

responded with a counterclaim for declaratory and injunctive

relief.

In the district court, Forward advanced a number of

theories in support of his claim to copyright ownership.

After a five-day bench trial, the district court filed its

findings of fact and conclusions of law, ruling that Forward

did not hold the copyright under any of the theories he

advanced. Forward v. Thorogood, 758 F. Supp. 782 (D. Mass.

1991). The court entered judgment for the Band, declaring

Thorogood and other Band members to be the copyright owners

and permanently enjoining Forward from commercially

exploiting the tapes. Forward now appeals.

On this appeal, Forward's first theory in support of his

claim of copyright ownership is based on his ownership and

possession of the tapes. According to Forward, ownership of

a copyrightable work carries with it ownership of the

copyright. Alternatively, he argues that the evidence

mandated a finding that the copyright was implicitly

1See M. Nimmer & D. Nimmer, 1 Nimmer on Copyright

2.10[A] n.18, at 2-147 (1992) ("Nimmer"). See also Roth v.

Pritikin, 710 F.2d 934, 938 (2d Cir.) (1976 Act, which

preempts the common law of copyright as of January 1, 1978,
determines the rights but not the identity of the copyright
owners of works created prior to that date), cert. denied,

464 U.S. 961 (1983).

-4-

transferred to him along with the demo tapes. We find no

merit in either claim.

The creator of a work is, at least presumptively, its

author and the owner of the copyright, Community for Creative

Non-Violence v. Reid, 490 U.S. 730, 737 (1989). The

performer of a musical work is the author, as it were, of the

performance. 1 Nimmer 2.10[A](2)(a), at 2-149. The

courts, in applying the common law of copyright, did in a

number of cases infer from an unconditional sale of a

manuscript or painting an intent to transfer the copyright.

3 Nimmer 10.09[B], at 10-76.1. This doctrine, often

criticized and subject to various judicial and statutory

exclusions, id., is the source of Forward's principal claim.

The difficulty for Forward is that even under the doctrine

this physical transfer merely created a presumption and the

ultimate question was one of intent. Id.

In this case, the district court found that "[n]either

the band nor any of its members ever conveyed, or agreed to

convey, their copyright interest in the tapes to Forward."

758 F. Supp. at 784. Rather the Band allowed Forward to keep

the tapes solely for his personal enjoyment. Id. Forward's

disregard of this central finding is premised on a highly

artificial attempt to claim "constructive possession" of the

tapes from the outset and then to argue that any reservation

by the Band at the end of the sessions was an invalid attempt

-5-

to reconvey or qualify his copyright. The reality is that

the Band never surrendered the copyright in the first place

and the transfer of the tapes' ownership to Forward was not a

sharply defined event distinct from the reservation of the

Band's rights.

Forward argues that the district court's finding is

mistaken, pointing in particular to a 1979 check for $500

made out to him from Rounder Records on behalf of the Band.

A notation indicates that the check was for an "advance

option" on the tapes, and Forward argues that the check

constitutes an "unambiguous admission" that he owned the

copyright. The Band counters that, shortly before Forward

was given the check, another demo tape made by the Band had

been sold by a third party to a record company. The Band

claims that, to prevent another such misadventure, it sought

an option on the physical tapes held by Forward. Although

Forward contests this explanation, the district court heard

the evidence, chose reasonably between conflicting inferences

as to the import of the check, and that is the end of the

matter. See Anderson v. City of Bessemer City, 470 U.S. 564,

573-74 (1985); Fed. R. Civ. P. 52(a).

Forward's second theory of copyright ownership involves

the "works for hire" doctrine. Under this doctrine, a

judicially developed notion later codified in the Copyright

Act of 1909, 17 U.S.C. 1 et seq., an employer is deemed the

-6-

"author" and copyright holder of a work created by an

employee acting within the scope of employment. Although

initially confined to the traditional employer-employee

relationship, the doctrine has been expanded to include

commissioned works created by independent contractors, with

courts treating the contractor as an employee and creating a

presumption of copyright ownership in the commissioning party

at whose "instance and expense" the work was done. See,

e.g., Murray v. Gelderman, 566 F.2d. 1307, 1310 (5th Cir.

1978); Brattleboro Publishing Co. v. Winmill Publishing

Corp., 369 F.2d 565, 567-68 (2d Cir. 1966).2 Forward

maintains that the tapes, created at his "instance and

expense," are commissioned works to which he holds the

copyright.

The district court rejected this claim, finding that the

evidence did not support it. The court said that, although

Forward booked and paid for the studio time, he neither

employed nor commissioned the band members nor did he

compensate or agree to compensate them. 758 F. Supp. at 784.

While the lack of compensation may not be decisive, see,

e.g., Community for Creative Non-Violence, 490 U.S. at 734

2 The Copyright Act of 1976 altered the works for
hire doctrine so that only certain types of commissioned
works qualify as works for hire, and then only if the parties
have agreed in writing to treat it as such. See Community

for Creative Non-Violence, 490 U.S. at 738. The Act's

provisions on works for hire operate prospectively and do not
govern this case.

-7-

(donated commissioned work), the evidence as a whole amply

supports the trial judge's conclusion. Nothing suggests that

the tapes were prepared for the use and benefit of Forward.

Rather, the purpose was to provide demo tapes to entice a

recording company. Forward was a fan and friend who fostered

this effort, not the Archbishop of Saltzburg commissioning

works by Mozart.

Finally, Forward argues that he is at least a co-owner

of the copyright as a "joint author" of the tape recordings.

The doctrine of joint authorship, recognized at common law,

is incorporated in the current Copyright Act of 1976. 17

U.S.C. 201(a). In appraising this claim, our concern is

with Forward's musical or artistic contribution rather than

his encouragement to the Band or his logistical support.

The district court found that "Forward made no musical

or artistic contribution" to the tapes, explaining that

Forward did not serve as the engineer at the sessions or

direct the manner in which the songs were played or sung.

758 F. Supp. at 784. The trial judge noted that Forward did

request that certain songs be played but "the band then

played those songs in precisely the same manner that it

always played them." Id. The district court's concise and

unqualified findings are fully supported by the evidence

Forward has only one legal prop for his contrary claim

and it is a weak one. In the House Report on the Copyright

-8-

Act of 1976, the committee observed that the copyright in

sound recordings "will usually, though not always, involve

`authorship' both . . . [by the artist and by] the record

producer responsible for setting up the recording session,

capturing and electronically processing the sounds, and

compiling and editing them to make the final sound

recording." H. Rep. No. 94-1476, 94th Cong., 2d Sess. 56

(1976). It is apparent from this passage that the "producer"

envisaged by the committee is one who engages in artistically

supervising and editing the production. See generally 1

Nimmer 2.10[A](2)(b), at 2-150 to 2-151. That is exactly

what Forward did not do in this case.

The Band has sought an award of attorney's fees expended

in this court, arguing that Forward's appeal is frivolous.

We think that the appeal comes very close to the line but

does not quite step over it and therefore deny the motion.

Affirmed.

-9-